1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATTIJO DANIELS, et al.,

                Plaintiffs,

    v.

NORTHSHORE SCHOOL DISTRICT ,

                Defendant.

CASE NO. 2:21-cv-00580-LK-BAT

**REPORT AND RECOMMENDATION**

The parties filed coordinated briefing to resolve plaintiffs' appeal on the stipulated record of an Administrative Law Judge's ("ALJ's") order made pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Dkts. 19–22. The ALJ found that defendant Northshore School District did not violate the IDEA and did not deny P.D. a free appropriate public education ("FAPE"). AR 1993–2030 (Dkt. 43). Having considered the parties briefing and the stipulated record, and determining oral argument to be unnecessary, the Court recommends **DENYING** plaintiffs' appeal, **AFFIRMING** the ALJ's order, and **GRANTING** judgment as a matter of law in favor of defendant.

**BACKGROUND**

Plaintiffs are the parents of the student P.D., who attended the District's Sunrise Elementary School during first and second grade. AR 1995–96. Although the District identified

P.D. for special-education evaluation during her first-grade year in spring 2017, developed an

Individualized Education Program ("IEP") in P.D.'s second-grade year, involved P.D.'s parents

for months in multiple, parent-requested revisions of the IEP, and implemented P.D.'s IEP as

soon the parents had provided consent to services, P.D.'s parents unilaterally withdrew their

child at the end of second grade in June 2018, and informed the District at the same time that

they were placing P.D. in a private school and would be filing a due process claim with the

assistance of legal counsel. AR 1995–2009. It wasn't until December 2019 that the parents filed

for due process under the IDEA, claiming that the District violated the IDEA, denied P.D. a

FAPE, and should be required to pay for their child's private-school education. AR 1993–95,

2013. The ALJ conducted a seven-day hearing involving the testimony of sixteen witnesses and

extensive documentary evidence. AR 1993–94. Following the hearing, the ALJ entered detailed

factual findings and conclusions of law on each of the parents' identified issues, finding that the

District did not violate the IDEA and that it did not deny P.D. a FAPE. AR 1993–2030.

## DISCUSSION

On appeal, the parents do not identify any argument, evidence, or authority that would

support reversal of the ALJ's thorough and careful decision. The parents' briefing does not

discuss the ALJ's decision in any meaningful way, relying instead upon conclusory statements

and selective citations to the record that in no way undermine the ALJ's many reasons for

rejecting their arguments. The Court finds that the parents have failed to meet their burden to

demonstrate that the ALJ incorrectly determined that the District neither violated the IDEA nor

denied P.D. a FAPE. The Court also finds that plaintiff's claim that the Washington State Office

of Administrative Hearings ("OAH") failed to accommodate their request for reasonable

accommodations—that is, their request that OAH appoint them a "suitable representative" in

their due process hearing—is not cognizable here because OAH is not a party to this action and the District has no authority over the accommodations that OAH provides.

## I.    Applicable Law and Standard of Review

The IDEA establishes a substantive right to a "free appropriate public education" for certain children with disabilities. *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 993 (2017) (citing *Board of Ed. Of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176 (1982)). That purpose is achieved through the development of an IEP appropriate to the needs of a child with a qualifying disability. *Endrew F.*, 137 S. Ct. at 994. An IEP is a comprehensive plan prepared by a child's "IEP Team" (which includes teachers, school officials, and the child's parents) and is drafted in compliance with procedures that emphasize collaboration among parents and educators and requires careful considerations of the child's individual circumstances. *Id.* "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. . . . [H]is educational program must be appropriately ambitious in light of his circumstances . . . ." *Id.* at 999. In matters alleging a procedural violation of the IDEA, a child is denied a FAPE only if the procedural inadequacies (1) impeded the child's right to a free appropriate public education; (2) significantly impeded the parents' opportunity to participate in the decisionmaking process; or (3) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); WAC § 392-172A-05105(2).

When a party challenges an administrative decision under the IDEA, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.§ 1415(i)(2)(c). Here the parties

agree that this matter should be reviewed based on the stipulated record before the ALJ. Dkt. 14, at 2. The parents bore the burden of proof before the ALJ and bear the burden of persuasion upon appeal here. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (holding that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief"); *L.M. v. Capistrano Unified School Dist.*, 556 F.3d 900, 910 (9th Cir. 2009) ("In an action for judicial review of an administrative decision, the burden of persuasion rests with the party challenging the ALJ's decision."); *Smith on Behalf of C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1123 (W.D. Wash. 2020) ("The party challenging the ALJ decision bears the burden to show the ALJ's decision should be reversed."). In IDEA administrative appeals, although the Court does not employ the typical highly deferential standard of review of agency decisions, a complete *de novo* review is inappropriate due to the fact-intensive nature of an inquiry into special-education eligibility and considerations of judicial economy. *See JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). Instead, the Court gives "due weight" to the administrative proceedings and accords particular deference to "thorough and careful" administrative findings. *Id.* Parents, like plaintiffs here, who unilaterally change their child's placement during the pendency of review proceedings, without the consent of the state or local school officials, do so at their own financial risk. *Florence County Sch. Dist. 4 v. Carter*, 510 U.S. 7, 15 (1993). They are entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the Act. *Id.*; *County of San Diego v. California Special. Ed. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996) (same).

## II.    Appeal of Plaintiffs' Claims before the ALJ

After a seven-day hearing, the ALJ entered detailed findings and identified how the

relevant evidence was weighed. AR 1993–2030. Because the ALJ's decision was thorough and careful in all respects, it is entitled to deference. *See JG*, 552 F.3d at 793. Plaintiffs contend that the ALJ erred with respect to 10 of the 11 issues they raised in the administrative hearing. Thus, on appeal, plaintiffs contend the District violated the IDEA and denied P.D. a FAPE from December 11, 2017 through December 11, 2019 by (**1**) failing to meet its child find obligation by identifying and evaluating P.D. in the area of reading fluency, communication, dyslexia, and motor skills; (**2**) failing to identify the primary (instead of just secondary) educational impacts of P.D.'s reading fluency and communication disabilities; (**3**) failing to evaluate P.D. in the areas of communication, dyslexia, and motor skills as requested by the parents; (**4**) failing to provide P.D. with an IEP that was reasonably calculated and appropriately ambitious in light of P.D.'s circumstances; (**5**) failing to provide the parents with a meaningful opportunity to participate in the evaluation of P.D. or the development of an IEP; (**6**) failing to correct P.D.'s educational records; (**7**) failing to provide appropriately trained special education teachers; (**8**) failing to place P.D. in the appropriate **7**educational placement; (**9**) failing to issue timely and appropriate prior written notices to the parents; and (**10**) failing to use technically sound evaluation instruments to evaluate the student. AR 1994–95; Dkt. 19, at 4–17.

The parents do not attempt to demonstrate why the ALJ erred; rather they carefully ignore the ALJ's reasoning and repeat rejected, conclusory arguments supported by a selective reading of the record. For example, plaintiffs do not object to the ALJ's determination that their issues on appeal 1, 3, 5, 9, and 10 arising prior to December 11, 2017 are barred by the two-year statute of limitations, instead choosing to reargue claims for the entire period without reference to the ALJ's substantive reasoning or the statute of limitations. *See* Dkt. 19 (plaintiffs' opening brief failing to refer to the ALJ's determination that several claims were time-barred); Dkt. 20, at

6 (plaintiffs' brief stating that the entire period should be considered because "the facts that occurred prior to December 11, 2017 are not irrelevant"). Plaintiffs have not carried their burden of persuasion of demonstrating that the ALJ's thorough and careful decision was incorrect in any respect. *See L.M.*, 556 F.3d at 910.

### A.  Claims Arising Prior to December 11, 2017 Barred by the Statute of Limitations (Issues 1, 3, 5, 9, 10)

There is a two-year statute of limitations on IDEA claims:

> The due process hearing request must be made within two years of, and allege a violation that occurred not more than two years before, the date the parent or school district knew or should have known about the alleged action that forms the basis of the due process complaint except the timeline does not apply to a parent if the parent was prevented from filing a due process hearing request due to:
>
> > (a) Specific misrepresentations by the school district that it had resolved the problem forming the basis of the due process hearing request; or
> >
> > (b) The school district withheld information from the parent that was required under this chapter to be provided to the parent.

WAC 392-176A-05080(2); *see* 20 U.S.C. §§ 1415(b)(6)(B), 1415(f)(3)(C); 34 C.F.R. § 300.507. The parents filed their due process request on December 11, 2019. AR 2013. Since plaintiffs knew or should have known about a number of claims prior to December 11, 2017, the ALJ correctly determined that the IDEA claims arising before December 11, 2017 were time-barred and that the two exceptions to the time bar did not apply. AR 2011–12. Plaintiffs do not attempt to challenge this determination.

Although the parents withdrew P.D. from the District in June 2018, they did not file for due process until nearly 18 months later on December 11, 2019. In applying the IDEA's two-

year statute of limitations, the Ninth Circuit has adopted the Third Circuit's reasoning and

concluded that "the IDEA's statute of limitations requires courts to apply the discovery rule[.]"

*Avila v. Spokane Sch. Dist.*, 81, 852 F.3d 936, 941 (9th Cir. 2017) (citing G.*L. v. Ligonier Valley*

*Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015)). This means that all IDEA claims must be filed

within two years of the "knew or should have known" ("KOSHK") date; if not, "all but the most

recent two years before the filing of the complaint [is] time-barred[.]" *Ligonier*, 802 F.3d at 620.

The application of the discovery rule to determine the KOSHK date is a fact-specific inquiry and

due weight should be given to an ALJ's thorough and careful determinations. *See S.H. v.*

*Issaquah Sch. Dist.*, 2022 WL 279139, at *9 (W.D. Wash. Jan. 31, 2022).

       Because plaintiffs do not contend that the ALJ's application of the IDEA's statute of

limitations was erroneous, any claim regarding this issue is waived on appeal. *Koerner v. Grigas*,

328 F.3d 1039, 1048 (9th Cir. 2003) (noting that the court of appeals ordinarily does not consider

matters on appeal not distinctly argued in an appellant's opening brief with exceptions for good

cause/manifest injustice, the issue was raised by appellee, or it does not prejudice the opposing

party). Regardless, there is no indication that the ALJ erred by determining that the parents'

KOSHK date regarding issues 1, 3, 5, 9, and 10 predated December 11, 2017. The District

notified the parents of a special education referral on April 16, 2017; received the parents'

consent for the initial evaluation and a written description of the parents' concerns in May 2017;

and the District initiated an evaluation in June 2017. AR 1996. Thereafter, a 2017 Evaluation

Team recommended that an IEP team be convened to create an IEP to deliver special education

services to P.D., including specially designed instruction ("SDI") in reading, math, written

language, and social emotional, with motor skills as a related service. AR 1997 (citing AR 2039).

The 2017 Evaluation Team members, including the parents, signed the Evaluation Summary for

the 2017 Initial Evaluation on August 31, 2017. AR 1997 (citing AR 2040). Thus, as of August

31, 2017, the parents knew that the District had not evaluated P.D. in the areas of communication

or dyslexia; had evaluated P.D. in the areas of reading and motor skills; and had not made a

determination regarding SDI for P.D. in the areas of reading fluency (issues 1 and 3). AR 2014.

The parents had an opportunity to participate in the 2017 Initial Evaluation meetings from April

16, 2017 to August 31, 2017 (issue 5). *Id.* On August 31, 2017, the parents received PWN of the

proposal to provide SDI for P.D. and were provided with a list of assessments and instruments

used to evaluate P.D (issues 9 and 10). *See* AR 2037–40. Moreover, the parents would have

known as of September 18, 2017, when they reviewed the evaluation they had requested from

Dr. Ruth Hillman, Ph.D., that P.D. might have been harmed by the 2017 Initial Evaluation

because Dr. Hilsman reported that P.D. had a disability in the area of reading fluency. AR 2014;

*see* AR 2068 (Dr. Hilsman). For similar reasons, the parents knew or should have known about

the District's actions as issues 1, 3, 5, 9, and 10 relate to the December 5, 2017 First Assessment

Revision. AR 2014. The parents were invited to participate in the First Assessment Revision;

received ample notice of the proposed actions to be taken; and were well-aware that the District

agreed with Dr. Hilsman's diagnosis of dyslexia, determined that P.D. was eligible for SDI in the

area of reading fluency, believed that the 2017 Initial Evaluation and Dr. Hilsman's evaluation

were consistent about P.D.'s motor skills, and would not evaluate P.D. in the area of

communication. *Id.*; *see* AR 2107–09 (December 2017 First Assessment Revision).

Plaintiffs do not suggest that the ALJ erred by determining that the exceptions of

subsection 2(a) and 2(b) of WAC 392-172A-05080 do not apply to exempt them from the IDEA

statute of limitations. Before the ALJ, the parents did not identify or present evidence that the

District misrepresented that it had resolved the problems that form the basis of issues 1, 3, 5, 9,

and 10; thus the 2(a) exception does not apply. AR 2013. The parents also offered no evidence to contradict the ALJ's conclusion that the District provided them with all the documents it was required to provide and offered them multiple opportunities to view the testing protocols; thus the 2(b) exception does not apply. *Id.*

The ALJ was thorough and careful in determining that plaintiffs knew or should have known about the District's actions as they relate to the District's Initial Revision by no later than August 31, 2017, and as they relate to the First Assessment Revision by no later than December 5, 2017. *Id.* This means that the ALJ properly determined that all of the District's actions related to issues 1, 3, 5, 9, and 10 taken prior to December 11, 2017—the date two years before the filing of the complaint—were time-barred by the IDEA's two-year statute of limitations.

### B.  Claims from December 11, 2017 through December 11, 2019

There is no substantive merit to plaintiffs' arguments regarding the remaining, non-time-barred claims arising from the period December 11, 2017 through December 11, 2019.

### 1.  Child Find Obligation Regarding Reading Fluency, Communication, Dyslexia, and Motor Skills

Plaintiffs contend that the District failed to conduct child find activities regarding reading fluency, communication, dyslexia, and motor skills because P.D. should have been referred for special education services before March 2017, and should have initiated services before the following fall in August 2017. Dkt. 19, at 4–7; *see* WAC § 392-172A-02040(1). Unlike in the administrative proceedings, plaintiffs' opening brief here raises no allegations regarding the District's child-find obligations from December 11, 2017 through December 11, 2019. *Compare* Dkt. 19, at 5–7 *with* AR 2016–18. As discussed above, this issue as raised on appeal is therefore time-barred. Regardless, plaintiffs have also failed to suggest how the ALJ erred by determining

that the District met its child-find obligation from December 11, 2017 through December 11, 2019 by evaluating P.D. in the areas of reading fluency, communication, dyslexia, and motor skills on multiple occasions and through reviewing numerous, relevant evaluations, including those requested by the parents. AR 2016–18.

The parents have failed to demonstrate that the ALJ erred by determining that issue 1 was time-barred and, regardless, cannot demonstrate that the ALJ erred by determining that District satisfied its child find obligation regarding reading fluency, communication, dyslexia, and motor skills for the period of December 2017 through December 2019.

### 2. Primary (Instead of Secondary) Educational Impacts Regarding Reading Fluency and Communication

The parents argue that the District "failed to identify the primary (instead of just secondary) educational impacts of [P.D.'s] reading fluency and communication disabilities." Dkt. 19, at 7. Although it is unclear exactly what parents mean by primary versus secondary impacts, or how P.D. was denied a FAPE as a result, plaintiffs appear to be contending that the August 2017 Initial Evaluation was insufficient. Dkt. 19, at 7–8. The ALJ concluded that to the extent the parents were reiterating the issue 1 claim in the areas of reading fluency and communication and were referencing the August 2017 First Evaluation, those claims were time-barred and, regardless, the District accepted Dr. Hilsman's evaluation and attempted to include a reasonably calculated and appropriate reading fluency goal in the Proposed Amended IEP, and that the District and P.D.'s private providers had not identified a communication disability or the need for additional evaluation in that area despite three evaluations in a nine-month period. AR 2028. The ALJ did not err by rejecting plaintiffs' "primary versus secondary impacts" argument. To the extent plaintiffs' issue 2 argument challenges the sufficiency of the IEP during the

relevant period, *see* Dkt. 19, at 8, that argument is addressed within the discussion *infra* of issue 4.

The parents have failed to demonstrate that the ALJ erred by determining that issue 2 was time-barred.

### 3. Evaluation of Communication, Dyslexia, and Motor Skills

The parents contend that the District failed to evaluate P.D. in the areas of communication, dyslexia and motor skills as purportedly requested by the parents. Dkt. 19, at 9. The parents focus exclusively on the August 2017 Initial Evaluation by contending that the District failed to assess these areas "as part of the initial process of assessing, evaluating and developing an IEP" for P.D. *Id.* The parents reference events all outside of the relevant time period: the consent they signed for the August 2017 Initial Evaluation, the evaluation itself, and communications regarding a dyslexia screener from November 2017. *Id.* (citing AR 2249; AR 2257; AR 2261–79; AR 3659); *see* AR 2014. Because the parents' opening brief relies solely on their claim that the August 2017 Initial Evaluation was deficient in evaluating P.D.'s needs in the areas of communication, dyslexia and motor skills, this claim is barred by the statute of limitations.[1] Moreover, the record demonstrates that the District's August 2017 Initial Evaluation evaluated P.D. in the areas of motor skills, reading, and writing (and by extension, concerns such as dyslexia). AR 2037–39; AR 2049–52; s*ee generally Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1056 (9th Cir. 2022) ("The District's evaluation is not deficient merely because it did not use the term 'dyslexia' in the manner Crofts would have preferred."). Neither the parents nor

---

[1] The District is correct to note that it is irrelevant for plaintiffs to cite evaluations conducted the year *after* P.D. had withdrawn from the District to support its argument that the District somehow failed to analyze the areas of communication, dyslexia, and motor skills during the relevant time period. Dkt. 20, at 20 n.8 (citing Dkt. 19, at 9); *see, e.g.*, AR 2649–51; AR 2661–84.

REPORT AND RECOMMENDATION - 11

District staff requested that P.D. be evaluated in the area of communication as part of her initial

evaluation, AR 2249 (District leaving box for "communication" unchecked and the mother

requesting that P.D. be assessed for reading, spelling, and math facts); and parents' evaluator Dr.

Hilsman did not recommend a communication assessment in October 2017, AR 2069 ("We do

not recommend further evaluation for speech/language for her IEP, although this has been

suggested to parents.").

The parents have failed to demonstrate that the ALJ erred by determining that issue 3 was

time-barred and, regardless, cannot demonstrate that the ALJ erred by determining that the

District had not fallen short of its obligations to consider communication, dyslexia, and motor

skills.

### 4. Sufficiency of the IEP

The parents contend that the Initial IEP to which the mother consented on December 15,

2017, was not appropriate to meet P.D.'s specific needs. Dkt. 19, at 10–11; *see also* Dkt. 19, at

8.[2] Their argument fails.

To provide a FAPE, the District must ensure that the student's IEP is "reasonably

calculated to enable the child to receive educational benefits[.]" *Rowley*, 458 U.S. 207. "Any

review of an IEP must appreciate that the question is whether the IEP is *reasonable,* not whether

the court regards it as ideal." *Endrew F.*, 137 S. Ct. at 999. The ALJ determined that P.D.'s IEP

was reasonably calculated and appropriately ambitious in light of her circumstances because

plaintiffs had failed to present evidence of the IEP's deficiencies while the District had

---

[2] In the opening brief, parents challenge only the IEP to which the mother consented on December 15, 2017, not the District's later proposed revisions and Proposed Amended IEP of May 2018 that demonstrated the District's consistent willingness to integrate the input of the parents and the parents' evaluators into P.D.'s IEP. *Compare* Dkt. 19, at 10–11 *with* AR 2171–83.

demonstrated through testimony and documentation both the IEP's sufficiency and P.D.'s

progress toward her learning goals. AR 2023–24. The ALJ's conclusion is well-supported. The

fifth draft of the IEP dated November 16, 2017, with an effective date of December 5, 2017, was

consented to and signed by P.D.'s mother on December 15, 2017. AR 1999–2000; AR 2071–

2101. As the ALJ noted, no witness except for the parents provided any testimony that the 2017

Initial IEP was inappropriate or that the goals contained incorrect information. AR 2024.

Plaintiffs' evaluator Dr. Hilsman agreed that the Initial IEP was appropriate and recommended

support in reading fluency, which the District duly sought to add to the IEP through a First

Assessment Revision. AR 2002, 2024; *see* AR 2068 (Dr. Hilsman noting "Continue IEP: We

strongly recommend specialized instruction in reading, math, and written instruction.").

According to special education teacher Chantel Porter and licensed occupational therapist

Gretchen Colonius, P.D.'s test scores demonstrated progress and her instructors agreed that P.D.

had made progress after implementation of the Initial IEP. AR 2024; *see, e.g.*, AR 572 (Ms.

Porter) ("Her progress was noted in her daily work. . . . She was reading faster. She was reading

fluently. She knew more sight words. She had an approach to work that she didn't know that was

great. She definitely knew the sounds you had been teaching her, which was awesome. She knew

her Wired for Reading Sounds that you had been working with. And then we added some other

ones, and she knew those, and she could acquire them to the words. And so absolutely noticed

progress in her."); AR 1113 (Ms. Colonius) ("Student was making great progress. I was really

pleased with how well she was doing."). Ms. Porter holds a master's degree in education and is a

certified teacher with endorsements for English Language Learners and for Special Education;

while Ms. Colonius holds two master's degrees. AR 1996 n.3 & 4. In contrast, the ALJ noted

that P.D's mother could not support the assertion that P.D. failed to make progress after

implementation of the IEP and that "the Parents did not provide any testimony or evidence that the goals drafted and proposed by [parents' advocate] Ms. [Heather] Schwindt and the Mother were measurable, appropriate, or reasonable." AR 2024. Ms. Schwindt is a tutor who does not possess a college degree but completed a six-month Orton-Gillingham Training. AR 2007 n. 11. It was therefore reasonable for the ALJ to conclude that the balance of the evidence supported the District's position that the Initial IEP was reasonably calculated to ensure that P.D. made progress and was appropriately ambitious given P.D.'s specific circumstances. AR 2024. Moreover, the Proposed Amended IEP dated May 3, 2018, included the reading fluency goal recommended by the parents' evaluators Dr. Hilsman and Dr. Philip Dunbar-Mayer. AR 2016; *see* AR 2052 (listing goals); AR 2068 (Dr. Hilsman); AR 2178 (Proposed Amended IEP showing 16 accommodations and an increase in SDI minutes); AR 2631–32 (Dr. Dunbar-Mayer). The District offered testimony that the Proposed Amended IEP contained reading fluency goals that were measurable, reasonable, and appropriate from Ms. Porter; and from the District's director of special education Adra Davy, who holds a master's degree in education, an advanced degree in administration, a bachelor's degree in elementary special education with an endorsement in psychology, and is a special education teacher and Phono-Graphix trainer. AR 1996 n. 4; AR 1998 n. 7; 652–54 (Ms. Porter); AR 799–800 (Ms. Davy).

Plaintiffs have not demonstrated that the ALJ erred by determining that the 2017 Initial IEP was appropriate to meet P.D.'s specific needs.

### 5. Meaningful Opportunity for the Parents to Participate in the Evaluation of P.D. or the Development of an IEP

The parents contend the District denied them the right of meaningful parental participation in the evaluation process and subsequent development of P.D.'s IEPs. Dkt. 19, at

11–12; *see* WAC 392-172A-3100; 34 C.F.R. § 300.322; *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1129 (9th Cir. 2003). Except for the four-day period between December 11, 2017 and December 15, 2017, the parents' contention with respect to the District's actions to develop the 2017 Initial IEP are time-barred by the IDEA's statute of limitations. Moreover, with respect to the Initial IEP and the District's attempts to amend P.D.'s IEP, the parents' contention is also counterfactual.

The ALJ concluded:

> The record shows that the District provided the Parents with an extensive opportunity to meaningfully participate in the development of the Student's Initial IEP. The parents attended Initial IEP meetings on September 21, 2017, October 19, 2017, and November 16, 2017. The District met informally with the Parents on December 14, 2017, to answer questions and agree on a curriculum. The District provided the Parents with five drafts of the proposed Initial IEP and modifications to goals, training and measurability criteria after receiving parental input. The Parents ultimately consented to the Initial IEP on December 15, 2017, and were provided with two copies of the Initial IEP on December 15, 2017, and January 8, 2018. . . .
>
> The Parents also claim that they were not given an opportunity to meaningfully participate in the development of the reading fluency goals for the Student's Proposed Amended IEP. Again, the record shows that beginning on January 8, 2018, the District attempted to schedule an IEP tea meeting with the Parents for January 10, 2018, and January 31, 2018, and provided the Parents with a proposed reading fluency goal on January 26, 2018. The evidence also shows that the District continued to offer to meet with the Parents and conduct a full IEP Team meeting and annual IEP review between January 31, 2018 through April 27, 2018, but the Parents refused to participate in an IEP Team meeting. The District thereafter met with the Parents on May 17, 2018, and June 19, 2018, provided the Parents with multiple copies of a Proposed Amended IEP with reading fluency goals, and modified the goals after receiving input from Ms. Schwindt and the Parents.

AR 2019–20. In contrast, neither during administrative proceedings nor on appeal here have plaintiffs shown that the District's extensive efforts to inform and meet with the parents over the

course of a full academic year were not meaningful or negatively impacted the parents' ability to participate in the development of the Initial IEP or Proposed Amended IEP. There is no evidence that the District either failed to appropriately consider information from the parents or withheld any information from the parents that they required to participate in the development of P.D.'s IEP. In fact, the record demonstrates that District staff went to great lengths to respond to the parents' concerns in an effort to reach agreement on P.D.'s educational services, considering information from the parents' advocates throughout the IEP processes, and allowing Ms. Schwindt to observe P.D. at school. AR 254; AR 1059; AR 2113–17.

The parents have failed to demonstrate that the ALJ erred by determining that the District did not deny them the right of meaningful parental participation in the evaluation process and subsequent development of P.D.'s IEPs.

### 6. Correction of P.D.'s Educational Records

The parents contend that the District failed to correct some unidentified records related to P.D. Dkt. 19, at 13. The ALJ properly found that this issue was not part of the due process procedure because the amendment of a student's educational records is addressed in an entirely different process that provides parents an opportunity for a hearing to challenge the information contained in the record. AR 2021; *compare* WAC § 392-172A-05080–05125 (due process hearings involving the identification, evaluation or educational placement, or the provision of FAPE) *with* WAC §§ 392-172A-05215(4), 392-172A-05220 (hearings to determine parents' request for an amendment of school records). This issue is therefore not properly before this Court on appeal.

### 7.  Appropriately Trained Special Education Teachers

The parents contend that the District failed to provide qualified instructors to educate P.D., citing WAC § 392-172A-02090 as the basis for their claim. Dkt. 19, at 13–14. This issue is not cognizable here because WAC § 392-172A-02090(4) expressly states "nothing in this section shall be construed to create a right of action on behalf of an individual student or a class of students for the failure of a particular school district employee to meet the applicable requirements." To the extent the parents assert that P.D.'s teachers were unqualified to provide educational services to her, their avenue for relief would be to file a complaint with the Washington Office of Superintendent of Public Instruction ("OSPI") pursuant to WAC § 392-172A-05025–05040. Moreover, the parents have not identified any evidence to support their claim that P.D.'s educators were not sufficiently qualified to deliver instruction to her. *See, e.g.*, AR 520, 625, AR 3204–05 (Ms. Porter); AR 914, 930 (Ms. Brown).

The parents have not demonstrated that the ALJ erred by determining that P.D.'s instructors were qualified and experienced to deliver SDI and related services to P.D. *See* AR 2028.

### 8.  Appropriate Educational Placement

The parents contend that the ALJ erred in determining that P.D.'s educational placement at Sunrise Elementary School with an IEP was appropriate. Dkt. 19, at 14–15. This contention lacks merit.

The IDEA requires that school districts educate students in the least restrictive environment, with removal from the regular education environment occurring only when the nature or severity of the student's disabilities is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 20 U.S.C.

§ 1412(a)(5)(A); *see also* WAC § 392-172A-02050 (corollary state regulation); *Sacramento City Unified Sch. Dist. Bd. Of Ed. v. Rachel H.*, 14 F.3d 1398 (9th Cir. 1994). Plaintiffs allege that the District should not have placed P.D. at Sunrise Elementary School with an IEP; rather, they should have considered options such as the private school Hamlin Robinson to which P.D.'s parents moved her. Dkt. 19, at 15. The ALJ found that parents had not articulated a basis for this allegation beyond a general disagreement with the Initial IEP and proposed reading fluency goals in the Proposed Amended IEP. AR 2026. "Even then, it is not discernable from the record whether the Parents believe the Student should receive more special education services minutes or less, or if the Student was or was not placed in her least restrictive environment while attending the District. The District, on the other hand, presented testimony from Ms. Porter, Ms. Davy, and Ms. Brown that the Initial IEP and the Proposed Amended IEP place[d] the Student in her least restrictive environment at Sunrise Elementary." AR 2026–27. The ALJ therefore determined that plaintiffs had failed to carry their burden of demonstrating that the District failed to select the appropriate placement for P.D. AR 2027.

The parents have presented no evidence or argumentation that suggests the ALJ incorrectly determined that the District's placement of P.D. at Sunrise was appropriate, or that placement at a private school such as Hamlin Robinson, which removed P.D. from the general student population and placed her in a population that focuses on students with disabilities, constituted the least restrictive environment. The record shows that P.D. spent the majority of her day at Sunrise in the general education setting and was progressing. AR 572–73; AR 647–49; AR 928; AR 2090; AR 2115–17; AR 2196–2200. As discussed earlier, the ALJ correctly determined that P.D.'s Initial IEP and Proposed Amended IEP were reasonably calculated and appropriately ambitious in light of her circumstances. Although parents are free to make their

own educational decisions for their children, this does not mean that those decisions must be borne at public expense. 20 U.S.C. § 1412(a)(10)(C). Here no reimbursement is warranted because the parents cannot show that the District's placement of P.D. in Sunrise with an IEP violated the IDEA and that the private-school placement at Hamlin Robinson was proper. *Florence County Sch. Dist. 4*, 510 U.S. at 15; *County of San Diego*, 93 F.3d at 1466.

The parents fail to demonstrate that the ALJ erred by determining that it was appropriate for the District to place P.D. at Sunrise Elementary School with an IEP.

### 9.  Prior Written Notices to the Parents

The parents contend that the District failed to provide timely and appropriate prior written notices to them. Dkt. 19, at 15–16. This claim is refuted by the record.

The ALJ found that the parents failed to identify which prior written notices were untimely or those that the parents claimed they did not receive. AR 2022. Instead, the ALJ concluded that when the District took any action regarding P.D., it "issued a PWN that same day or within one day." *Id.* Thus, the ALJ concluded that the District provided the parents with appropriate notices during the time period at issue between December 11, 2017 through December 11, 2019. *Id.* A review of the record supports the ALJ's decision. *See, e.g.*, AR 2071–72; AR 2113–14; AR 2159; AR 2182–83; AR 2194; AR 2195.

The parents have failed to demonstrate that the ALJ's erred by rejecting plaintiffs' contention that the District failed to provide timely and appropriate written notices to them.

### 10. Technically Sound Evaluation Instruments.

The parents contend that the District did not use technically sound instruments to evaluate P.D., citing WAC § 392-172A-03020(2)(c). Dkt. 19, at 17. This contention has no merit.

1    Plaintiffs do not explain what evaluation they are referencing or what measures they

2    believe failed to meet the standard of WAC § 392-172A-03020(2)(c). As support, the parents cite

3    to a page of the mother's testimony in which she states her disagreement with how the District

4    will use Washington State's practice of revision assessments. Dkt. 19, at 17 (citing AR 79). The

5    parents also suggest that the ALJ erred by denying their request for a subpoena to obtain

6    copyright-protected test protocols used in P.D.'s evaluation, Dkt. 19, at 17 (citing AR 1858–59).

7    The ALJ determined that those protocols were irrelevant because they related solely to the

8    testing measures used in the August 2017 Initial Evaluation, which was outside of the relevant

9    time period and therefore that the contention was barred by the statute of limitations. AR 1858

10   ("[T]he evaluation using these tests was performed prior to December 11, 2017.").

11   The parents have not demonstrated that the ALJ erred by determining that their

12   contention regarding the District's failure to use technically sound instruments was barred by the

13   IDEA's two-year statute of limitations.

14   **III.    Plaintiffs' Reasonable Accommodation Claim Against Non-Party OAH**

15   The parents contend that the OAH failed to appropriately accommodate their request for

16   reasonable accommodations, specifically the parents' request that they be appointed a "suitable

17   representative" in their due process hearing based on the mother's disability. Dkt. 19, at 17–18.

18   The parents do not explain how their claim against OAH is cognizable here as OAH is not a

19   party to this action and the District has no authority over the accommodations that OAH

20   provides. The ALJ appropriately referred the parents to the ADA coordinator and delayed the

21   due process hearing to allow the coordinator to evaluate the need for a representative. AR 1649–

22   52; AR 1701; *see* WAC § 10-24-010(3). The parents elected to proceed on their own behalf

23   rather than to request that the decision by OAH's ADA coordinator be reviewed by the chief

administrative judge. WAC § 10-24-010(16). At no time did the parents object to proceeding *pro se* before the ALJ and instead agreed to proceed to hearing without counsel. There is no basis to contend that the ALJ erred in any respect as the ALJ was not the OAH representative responsible for evaluating and deciding the accommodation request. Whether to grant the parents a representative for purposes of the administrative hearing was vested in the ADA coordinator, not the ALJ, and all records considered in the decision whether to appoint a representative are kept confidential and are held separately from the adjudicative proceeding record. WAC § 10-24-010(5), (9)–(10).

There is no actionable claim here against the District regarding non-party OAH's decision not to grant the parents an accommodation by appointing them a representative for the due process hearing.

## CONCLUSION

The Court recommends **DENYING** plaintiffs' appeal, **AFFIRMING** the ALJ's decision, and **GRANTING** judgment as a matter of law in favor of defendant because a preponderance of the evidence shows that defendant Northshore School District did not violate the IDEA and did not deny P.D. a free appropriate public education.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 3, 2022**. The Clerk should note the matter for **August 5, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **twenty-four (24) pages**. The failure to timely object may affect the right to appeal.

DATED this 13th day of July, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22